## BURNS v. DELAWARE & HUDSON CO.

(Supreme Court, Appellate Division, Third Department. November 20, 1906.)

RAILROADS—STREETS—OBSTRUCTIONS—CONTROL OF TRAINS—PERSONS LIABLE.

> Defendant railroad company, while using a union station, used the tracks of the station company, which had full control of the trains while at the station. The station company ordered a train into the station 20 minutes ahead of time for departure, and so located the same that the locomotive, while standing at the station, extended part way into an intersecting street and remained there for more than 5 minutes, in violation of a statute. Plaintiff was working in the street at the time, when a horse and wagon approached rapidly, and, the driver being signaled to cross in front of the engine, the horse became frightened and ran against plaintiff, causing the injuries complained of. *Held*, that the location of the train was the negligent or wrongful act of the station company, for which the railroad company was not liable.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 824–829.]

Appeal from Trial Term.

Action by Peter Burns against the Delaware & Hudson Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

See 96 N. Y. Supp. 509.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

Lewis E. Carr, for appellant.

Van Santvoord & Wellington (George B. Wellington, of counsel), for respondent.

JOHN M. KELLOGG, J. The material facts are stated in the report of this case on a former appeal. 110 App. Div. 592, 96 N. Y. Supp. 509. The following additional facts now appear: The accident occurred at 4:40 p. m. The train was scheduled to leave the station at 5 p. m. Upon this trial the court substantially charged that, if the engine and train were put and kept in the position in which they were by the directions and under the control of the Union Station Company, the defendant could not be charged with obstructing the street, even though the engine extended beyond the line of Fulton street, but submitted to the jury the question whether the engine obstructed the street, whether the obstruction was willful and caused the injury. The charge that the defendant was not responsible for the location and keeping of this engine over the line of Fulton street, if that act was caused by the Union Station Company, constituted the correct rule, and prevented a recovery. The defendant had no station or

tracks between or upon these streets. It had to rent its facilities of the Union Station Company. Several other companies also had like facilities in such station. It is manifest that the defendant, in a joint station like this, could not operate its trains in its own manner and subject to its own discretion: but all of the companies must operate their trains and place them in the station under the direction and subject to the control of the officers of that company. The life and safety of the traveling public required that there should be but one control of the station, and that each separate company could not have its own way. It will not do to say that, if the defendant entered into a contract which will compel it to commit a nuisance at the command of the Union Company, it is liable nevertheless. It has not entered into any such contract. It had the right, and it was necessary for it, to enter into a contract that its trains should be controlled by that company in its station.

Defendant had the right to assume that the trains would be controlled according to law, and with due respect to the rights of the public. I hire an independent contractor to do a piece of work lawful in itself and which may be done in a lawful manner. He does it in an imperfect and reckless manner, and in such a way that some one is injured. Still I am not liable, because the acts I contracted for were legal, and the only negligence is the negligence of the contractor in doing a proper thing in an improper way. My servant takes my carriage to cross the river upon a ferryboat and pays the ferryman for the service. The ferryman takes charge of the carriage and man according to the rules of the boat, and by placing them improperly on the boat causes an injury to another. I am not responsible for his carelessness, as he was an independent contractor. Here the situation of the defendant is practically the same. It put its different trains and trainmen in charge of the Union Company while in and about that station. The station company was an independent contractor and responsible for the manner in which it performed its duties. If the engineer upon the train, by direction of the Union Company, violated the statute by obstructing the street for more than five minutes, that engineer and the station company may be guilty of an offense; but such offense would furnish no ground for liability against a defendant who was powerless to remove the train or control its movements. When a train is ordered into this street, the defendant and the engineer have the right to suppose it will not be required to stay longer than was permissible; and if the Union Company caused it to stay an improper time it is the act and default of that company.

It is conceded, of course, that the defendant could not engage the station company to do an illegal act and shield itself from liability, because it was done by its employé and not by itself. But this train was upon the Union Company track, subject solely to its directions, and, while the defendant's servants manned the train, they and defendant were powerless to act. While the Union Company ordered this train into the depot 20 minutes ahead of time for departure, the defendant is not charged with knowledge that this engine was to be placed into or near the street, and when the engine was first directed to go upon

the street the officers of the train did not know that they would be com-
pelled to wait there an unreasonable time. It does not appear that they
did not have reason to believe the train would be backed up and off
the street. The defendant itself is not, therefore, liable for the crimi-
nal act, if it was one, of the trainmen or of the station company in
keeping this engine upon the public street beyond the prohibited time,
and no negligence can be assumed against it on account of its train
being there. The responsibility under the statute, or on the question
of a nuisance, rests upon the Union Company, or the officers of the
train itself. The defendant has violated no duty which it owed to
the public or plaintiff, and there is no evidence tending to show that
it committed any nuisance or was guilty of any negligent act.

The judgment and order should therefore be reversed, and a new
trial granted, with costs to the appellant to abide the event. All con-
cur; PARKER, P. J., in result, and SMITH, J., in memorandum.

SMITH, J. (concurring). This case has been twice tried. The first
trial resulted in a verdict for the plaintiff of $1,000. This judgment
was set aside by this court by reason of an error in the charge of the
trial judge. Upon a retrial the jury rendered a verdict for $6,500.
From the judgment entered upon this verdict, and from an order deny-
ing defendant's motion for a new trial, this appeal is taken.

Fulton street, in the city of Troy, runs east and west and crosses the
railroad tracks of the Troy Union Railroad at grade at the north end of
the Union Station. The station is between Fulton street at the north
and Broadway at the south. The distance between the two streets is
400 feet. In July, 1901, when the plaintiff was injured, seven railroad
tracks extended through the station and across Fulton street at the
north end thereof. The width of the crossing on Fulton street—that is,
the space occupied by those tracks—was 80 feet. Fulton street is it-
self 60 feet wide. The entire width of the street at this place was
planked, and there was nothing to distinguish the sidewalk from the
driveway. The railroad tracks belonged to the Troy Union Road,
which company has sole charge of them and their use. Three rail-
road companies ran their trains over the Troy Union Railroad tracks in-
to and from the Troy Union Station. These companies were the Dela-
ware & Hudson Company, New York Central, and Boston & Maine.
The trains of those companies, when on the Troy Union tracks in and
about the station, were under the direction and control of the Troy
Union Company. Before 4 and 5 o'clock in the afternoon of July 12,
1901, the plaintiff, with other employés of the Troy Union Company,
was engaged on Fulton street, north of the middle of the street and
near the east side of the crossing, relaying the plank on the crossing.
On track No. 3 was a Delaware & Hudson engine. The engine headed
north. The train to which it was attached was a passenger train, due
to leave the station for the north at 5 o'clock. It consisted of the engine
and tender and five cars—four passenger coaches and one baggage car.
The train occupied the whole station on track No. 3, between Broad-
way and Fulton streets, and the front end of the engine extended over
and upon Fulton street. The accident is claimed to have happened at
20 minutes before 5 upon that day. North of this engine, upon Fulton

street, was a sufficient space to allow a team to pass.    While a horse was being driven along Fulton street ahead of this engine, it became frightened by reason thereof, and, running away, struck and injured the plaintiff.    For the injury sustained plaintiff has sued the defendant and recovered a judgment.

This case is not in any way affected by section 421 of the Penal Code. This is a criminal statute, to be construed favorably to one charged with its violation.    In the first place, a partial obstruction only of the highway is not within its terms.    Again, a willful obstruction is one caused maliciously, without proper motive.    An engineer who purposely obstructed a crossing in the reasonable conduct of his train is guilty of no violation of the statute.

The right of a railroad company to cross a highway carries with it the right to pass over that highway and obstruct the same so far as reasonable necessity requires.    While in the exercise of duties called for by the reasonable exigency of its work, it is guilty of no wrong and of no negligence by reason of its occupation of the highway.    If an engine or car is placed upon a public street, and left there when there is no reasonable necessity therefor, the company is then guilty of creating a nuisance and unlawfully obstructing a public highway.

It is not a matter of public interest how long a train remains at a station, unless by reason of its length it extends upon or across a highway. If an accident is caused by its being upon the highway, the question is, then, was it there at the time of the accident from a reasonable necessity of the service?    If a train should pull into a station and necessarily occupy an adjoining highway five minutes before it was scheduled to leave, it should probably be held as matter of law that it was properly upon the highway.    If a train, however, pulled into a station and occupied an adjoining highway a longer time before leaving, it might then become a question of fact as to whether it was necessarily upon the highway at the time of the accident.    In the case at bar this train was to leave at 5 o'clock.    The accident was at 4:40.    The jury should have been allowed to say whether it was reasonably necessary for this train to occupy the highway at the time of the accident.    If not, the fact of such occupation was a wrongful act, and if by reason thereof this horse was caused to run away, injuring the plaintiff, defendant is responsible therefor.

This case was submitted to the jury solely upon the question as to whether the highway was being willfully obstructed at the time of the accident and whether by reason of such willful obstruction this injury was caused.    In view of the conclusions herein expressed, the judgment must be reversed, because based upon an erroneous theory of the law.

I do not agree that defendant may shield itself behind the contract with the Troy Union Company, which owns the station and tracts upon which its train was standing.    While in the station, those in charge of defendant's trains must obey the orders of the station master of the Troy Union Company.    The contract sworn to, however, does not authorize the Troy Union Company to require defendants to bring their train to the station 20 minutes before starting time.    Nor is there a word of evidence that the train was brought to the station at that time

by order of the Troy Union Company. The control of the train while at the station may be with the Union Company, but not the time of its coming. When the train is so long, however, as to necessarily extend into one street or the other, the time of its coming is the vital question in determining whether, at the time of the accident, it was unnecessarily upon the highway as a nuisance. Whatever the terms of the contract, it would not be construed to require defendant to obey an instruction of the station master to do an act which would amount to a nuisance. But, howsoever the contract may be construed, a defendant can no more excuse a wrong by alleging that the wrong charged was committed under a contract with another than it could defend a crime by alleging that the crime charged was committed under a contract with another.

I do not mean to indicate that in my judgment the relations between the defendant and the Troy Union Company were wholly immaterial. Where there are several railroad companies occupying the same station, what would be a reasonable time to bring a train into a station for the purpose of allowing passengers to enter might be very different than if the defendant was alone occupying the station. All the conditions under which the defendant was there, including reasonable requirements of the Troy Union Railroad Company, should be considered in determining whether there was reasonable necessity for the presence of the train in the station and for its partial occupancy of the highway at that time.